You look familiar. Hi. It's been too long. Well, at least we can hold a thought that long that we know that it's the same counsel coming back. Can I just say I'm so glad I practice criminal law and not civil law? Well, you definitely have. I think the facts are definitely sexier in criminal law. There's no two ways about that. I mean, I'm not saying rollover minutes aren't important. Well, by the reaction of the audience, I think that you have people that have a similar view to you. Good morning again. May it please the Court, my name is Stephen Witchley, and I represent the appellant Charles Williams in these two consolidated cases. The two cases have been referred to colloquially in the briefing as the gun charge and the drug charge. I'm going to talk this morning exclusively, unless there are questions about the gun charge, I'm going to talk exclusively about the Rule 11c1 violation that we are alleging in the drug case. Rule 11c1 says explicitly that the district court, quote, must not participate, unquote, in plea discussions. The case law, both from this circuit and elsewhere around the country, refers to this rule in various ways as a rule that has no exceptions, that provides an absolute prohibition, an absolute ban on district court participation in plea discussions, that it is a bright line rule, that the rule is strict, and that the rule is categorical. In this case, the district court clearly violated Rule 11c1 in the ex parte conversation that the court had with Mr. Williams immediately prior to Mr. Williams reversing course and pleading guilty as charged to an open plea recommendation with no agreement in place with the government. There are four, during the ten pages or so of transcript during which this conversation took place between the district court and Mr. Williams, there are four different areas that I think lead to the inescapable conclusion that the rule was violated. The first, and probably the most important, was the actual encouragement from the district court to, quote, why don't you just plead straight up today? Why put yourself through this, unquote? Well, now, being an experienced trial judge myself and having that, first off, the defendant starts the colloquy when they come in, that he comes in that day and wants to complain about his lawyer. So they go and they get that business out of the way. And, you know, I can tell, you know, I assume both of you go to court and do criminal matters, that a lot of times defendants, you know, want to talk to the court or, you know, either want to complain about something or they want to, and they start the conversation. And the court's not entirely in a position to just say, well, or shouldn't, you know, we'd be criticized for just saying, shut up, we don't want to talk to you as far as that goes. So the plea deal was negotiated before he ever got there. But then he wants to have a conversation. And I'm sort of looking at why don't you just plead straight up than is just saying, like, hey, plead to the sheet, take your chances, and, you know, don't even have anything to do with the deal. I mean, a defendant's free to come in as much as lawyers don't like sometimes. At any point in time, they can just come in, they can plead to everything in front of them, they can throw themselves on the mercy of the court and handle it that way. Why isn't that, you know, why is that embroiling the judge in the plea negotiation? Well, the judge inserted himself into plea discussions. I disagree that there was a deal worked out ahead of time. There had been an offer previously that had been rejected. And certainly when a defendant said … Well, was that judge involved in coming up with that offer at all? I don't believe so. The record is unclear, but I'm assuming, no. So a couple of cases, our case Frank and then Beard in, I think, the First Circuit, saying, look, when the court isn't pressuring the judge, isn't making some statements suggesting they'd be better off taking a plea, when it's just, I think, like an off-the-cuff remark, Beard says, impromptu, and Frank says, you know, some misarticulation. That's not enough to arise to the level of inserting yourself into a plea agreement. And when I look through the transcript, there certainly seems like a reasonable argument that the court was just, had that one remark, but it wasn't specifically pressuring the defendant in any way. Why isn't that just a Frank Beard sort of statement? Well, the court follows, and I'll get back to your question, Your Honor, because I didn't answer it. The court follows up this conversation or this statement of why don't you just plead straight up today, why put yourself through this, with a fairly lengthy discussion about the court's authority in imposing sentence. And the court emphasizes I, the judge, am the ultimate decision maker regarding sentencing. The government's role is then minimized. The court minimizes the government's role and in fact says, I don't care what they recommend. And this is a conversation that's taking place outside the presence of the prosecutor. So the judge is essentially saying to the defendant, don't worry about what the prosecutor recommends. I don't care what they recommend. I get to decide. And, you know, it's in a context in which the prosecutor isn't even there to represent the government's interest. And immediately after the judge says that, Mr. Williams says, can we take a recess, please? I got to talk to my attorney. And immediately after that brief recess is taken, he comes in and pleads guilty to an open offer sheet. Getting back to Your Honor's question, sure, the court can address concerns that a defendant raises about his representation. That conversation should be limited to, especially given the categorical nature of this rule, that conversation should be limited to concerns that the defendant has about the representation that he's receiving from his defense counsel. That conversation should not morph into a one-on-one conversation between the district court and the defendant about whether or not the defendant should plead guilty or not. And there were a couple other aspects to the conversation that are very troubling. Well, I think the complaint there, I'd be complaining if I were the prosecutor, because they were supposed to be talking about representation issues ex parte. They weren't supposed to be, you know, having other conversations. But, you know, it strikes me on some level as judges don't have to do with, you know, there's always a constant tension from the standpoint that judges don't have to do what prosecutors want them to do. And on the other hand, you know, there's always that going on. But any defense attorney likes to have a prosecutor recommend something that they feel would be favorable because a judge can take shelter in that, as it were, because the judge doesn't know the evidence. But I don't know why that just isn't a correct statement of, I don't have to do what the prosecutor says. You know, I'm going to decide this case. So if that's what you're, you know, it's kind of like, you know, a lot of times people look to the court and this guy obviously was antsy. He was nervous. And he, I think, was, I think he on his own was sort of feeling out his judge. And the judge is saying, hey, look, I'm going to do what I'm going to do. If we've got a jury out there waiting for you, you can have your trial if you want your trial. It's up to you. Why don't you fish, but you're going to fish or cut bait because I've, you know, the whites of the eyes are here and it's showtime. Well, but that's not really what happened. I mean, the judge said, why don't you just plead guilty? The judge did say, I don't care what the state, what the government recommends. And he also went out of his way to scold Mr. Williams for making bad decisions in the past and then says to him, you're continuing to make bad choices, which can certainly be interpreted as your decision to proceed to trial in this case is a bad decision. Why don't you just plead straight up today? And I think it's highly significant that this was an ex parte communication because it does create, and I do think the government, you know, should be upset with what happens in the closed proceeding. But the significance from our perspective on appeal is that this type of ex parte communication where the government is not present, where the defense attorney is present but doesn't participate at all. Defense attorney wasn't horrified by this. No. Object. Which is why we're dealing with a plain error. So once again, is your argument going to be here that defense attorney had a good lunch date, didn't want to go to trial that day, and therefore went along with this? Or is it really just not that objectionable? Well, frankly, since we're dealing with a plain error standard, it doesn't really matter what defense counsel's motivation was for not objecting. The defense counsel failed to object. But the ex parte nature of this communication creates an appearance of partiality on the part of the judge that a defendant in this situation where the prosecutor's not there and it's really just a one-on-one conversation between the defendant and the judge, the defendant is much more likely to interpret comments by the judge as personal advice rather than as opposed to a statement that's made in open court, do you understand I'm not obligated to follow the government's recommendation. That's a lot different than a judge saying to a defendant in chambers, look, I don't care what they recommend, why don't you just go ahead and plead guilty as charged. I mean, it's frankly difficult to imagine a more obvious violation of this particular rule. And I think the court has to look at the violation in the context of what the cases say about how the rule has to be strictly applied, how it is categorical, how there are no exceptions to the rule. Well, let me talk about that for a moment. You do mention Dominguez Benitez in your briefs, but that indicates that contrary to Bruce, so one question would be, was Bruce overruled? It's not per se prejudicial. Dominguez Benitez says, no, for a Rule 11 violation, the burden is on the defendant to show a reasonable probability that he wouldn't have entered the plea, but for the judge's participation in the plea negotiation. And then it goes through a series of factors and criticizes us, the Ninth Circuit in that case, for not having considered these various factors. Can you explain what's your best argument that there was a reasonable probability that he wouldn't have entered the plea going through those Dominguez Benitez factors? I can certainly, since I don't have the Dominguez Benitez factors in front of me and they're not leaping into my head at the moment, I can certainly tell you what the factual bases are, I think, that give us more than a reasonable probability that Mr. Williams would have proceeded to trial. I mean, first of all, the record is clear from previous proceedings in the case that Mr. Williams felt that he had been treated unfairly by the resurrection of this previously dismissed state court charge. And he had shown no hesitation and no shyness about litigating substantive motions in the case. There was a motion to dismiss. There was a motion to suppress. He obviously had asserted his right to go to trial all through the proceedings up until the day the jury was about to be selected. I think it's also significant that he had recently gone to trial just two months prior on the gun charge. And, frankly, the evidence in the gun charge, which is one of the reasons why I'm not talking about it today, was substantially more powerful than the evidence in the drug case. And that was a case where he had stood on his rights, asserted those rights, and proceeded through a jury trial very recently prior to this plea. Why was the evidence weaker in this case, the drug case? Sure. This was a case where Mr. Williams and another gentleman were arrested on the street after officers claimed that they observed a drug transaction of some sort taking place. The two prisoners, Mr. Williams and the other gentleman, were transported together to the precinct. They were strip searched at the precinct, and there were no drugs found on Mr. Williams. There were drugs found in the van, 4.6 grams of cocaine. The other suspect, as I mentioned, had been transported in the same van, and the drugs were found in the van in a location which was closer to where the other suspects had been seated. There was no money found on Mr. Williams, and this was a case of possession with intent to deliver. So we've got a small amount of drugs found in the van. A jury could readily have found that the drugs did not belong to Mr. Williams, that they were, in fact, in possession of the other guy. Or a jury could have found, yes, this is Mr. Williams' drugs, but we simply don't have enough evidence here to prove an intent to deliver. We have a small amount of drugs. We have no money, and we have some statements made by the defendant several hours earlier. So I would be happy to go to trial on this case as defense counsel. I wouldn't have been so happy to go to trial on the gun charge, frankly. And a reasonable probability is the same reasonable probability standard that we see in an effective assistance case. It's less than a preponderance of the evidence. So I think that Mr. Williams easily meets that standard. I also think the timing of the plea is significant in showing a reasonable probability. He enters his guilty plea minutes after this conversation with the judge. It's, can I have a recess to talk to my lawyer? The judge says, I'll give you ten minutes. He comes back, and he enters his plea of guilty. So I think the timing of that raises a strong presumption that there's a causal connection between the conversation that he had with the court and the plea that he entered immediately thereafter. And at this point, I think I'm going to save the rest of my time for rebuttal. Thank you. Thank you. Good morning, Your Honors, and the police and court. Armin Swarmiathan for the United States Government. Well, this is exactly what you don't want courts talking about with defendants when they're having a motion about counsel not being competent. Would I have preferred that the district court not engage in the discussion? Yes. But I think... A district court clearly shouldn't be talking about things like that with you not there. I don't think our presence actually has all that much relevance. I understand that it happened ex parte without the prosecutor there. And had we been there, maybe it would have been a different conversation. But I don't think our presence or absence really has all that much to do with ultimately what happened and the conversation that took place. You have to remember that Mr. Williams started this not just to complain about his lawyer because he didn't like him. He had substantive complaints about the quality of representation he was getting from Mr. Kellogg that he wasn't doing the right pre-defense investigation, that he wasn't looking at certain evidence. And also, which was very important to Mr. Williams, and this comes out through that conversation, that Mr. Kellogg wasn't doing the appropriate investigation of his criminal history because that's relevant to determining whether or not he's a career offender. And as you read the colloquy over and over again, Mr. Williams repeats to the court, I don't want to be a career offender, I don't want to be a career offender. I think, despite what Mr. Richley says about the ex parte nature of the sentencing conversation, that this is what's important. It's not just that the district court said, I don't care what the government recommends. The district court says, if the government recommends 1,000 months, I don't care if that's not proper. If the government recommends 20 months, I don't care if that's not proper. In other words, giving the defendant no indication one way or the other, no promise, no wink, no nod, that he was going to do anything other than consider the evidence and make a sentence. But that's in response to, he tells the defendant, you made a lot of bad choices. An offer was made to you, you turned it down. And are you going to get a similar offer? Probably not. And then the defendant says, well, an offer I had, and I assume it's one maybe that was pending or could be pending, the sentence is way too high. They're trying to stick me in the career offender or something. And then the judge is saying, well, it doesn't matter what they want to do, it's what I want to do. Which is, the implication is, so why aren't you pleading guilty? It seems to me that you're getting into a discussion of whether you ought to plead guilty and how it might not hurt him to plead guilty. I don't think the district court gave him any indication that it might not hurt him. I think what the defendant had begun the conversation with is, I don't want to be a career offender. The government is labeling me as a career offender. It puts my range very high. It gives me a range of 160 to 210 months, as opposed to something much lower for just four and a half grams of crack cocaine. And so the district court is saying, Mr. Williams, I don't know if you understand how this process works or not, but here's what happens. I essentially take the recommendations of the government of defense, but I can ultimately do what I think is right. That is nothing different than what happens in every single plea colloquy, at least in our district, and I assume in most districts, which is the judge says, the judge who's taking the plea for every other defendant says, Mr. So-and-so, you understand that the court is required to compute the guidelines. They will look at the 3553A factors, and they can make a recommendation. They're not bound. They will make a decision. They're not bound by what the government recommends. They're not bound by what the defense recommends. Judge Martinez in this case did nothing different in that in explaining to Mr. Williams that regardless of what the government might label you as, this is going to be a determination that I'm going to make, and I'm not giving you an indication that I agree with the government or I disagree with the government. And that's really the crux. He's telling you that. So your best argument is that he was explaining how, you know, what the rules of people are in the courtroom and how, but he wasn't interjecting himself into a plea negotiation. That's exactly right. And in some sense, you have to also understand that's what was happening throughout this discussion. He was telling Mr. Williams repeatedly, you have a choice, Mr. Williams. I'm not going to give you a new lawyer despite your complaints. That ship has sailed. You have a choice, but you've been making a lot of bad ones. But those bad choices, I don't think that the record reflects that he was specifically commenting on a turn-down of plea deal. I think what he's saying is, and Mr. Williams actually was the one who admits this. Mr. Williams says, I've been acting out in court. I've been doing bad things. And so the judge reflects that self-criticism and says to Mr. Williams, Mr. Williams, you've made bad choices. Here's your opportunity to make another choice. This is your day, your choice. Okay. You've been making bad decisions from the get-go. Okay. You made bad choices that brought you to the attention of the police. You made bad choices that night that led to the arrest. You made bad choices here in court. You're continuing to make bad choices. The beauty of our system is you do the time. They allow you to make the choices. Yeah, at one point in time, they offered you a plea deal, whatever it was. You turned it down. You had control at that point in time. You turned it down. You think they're going to give you a better deal as time goes on? No. Are they going to give you any kind of deal today? I seriously doubt it. From their perspective, this is the last thing they want to be taking, a year trial and so on. It sure sounds like you're saying, you know, you should have taken that plea deal, and that's one of the bad choices you made. Well, I think that's a – Mr. Williams is the one who says, I had an offer to take a plea deal. I turned it down. It was a bad idea. He's the one who begins that line of discussion. Excuse me, Your Honor. And I think that's what's really relevant, Your Honor, was that the defendant says first, and he's talking about this initial offer that was made to plea to 80 months, and he says, and stuff like that, but it was too late. I already made my decision. So the judge is not telling the defendant he's made a bad choice because the judge necessarily thinks that independently. He might, but he's reflecting what Mr. Williams has already told him. Mr. Williams' admission, I made a bad decision. I should have taken that 80-month deal, not gotten convicted on the gun case, and I wouldn't have this drug case hanging over me. But I made a bad decision. So that's Mr. Williams' comment, and the judge is simply reflecting that. And Mr. Williams goes on about all the bad choices he'd been making in court on his previous case, about acting out in court, about saying things he shouldn't have been saying, about behaving badly. And the judge is saying to Mr. Williams, you've been making bad choices. You're the one who's telling me you acknowledge you've been making bad choices. Mr. Williams, this is your day to make another choice. It sounds like you're, okay, counsel for the appellant argues that this is worse because it was ex parte. I guess I'm hearing you say it was better because it was ex parte, because it just shows that the defendant was, he's the instigator of all of this, and that, you know, the judge wasn't trying to get involved in negotiating between defense counsel, prosecutor, and, you know, all of that. It's just, hey, the defendant's bringing this stuff up. Well, there's two things. Let me just unpack that for a second. One is I do think it's important that the defendant brings it up, because in some ways the judge was a little bit sort of blindsided by the fact that this is where the discussion was going to go. What Judge Martinez thought was going to happen was we're going to talk about your complaints about your counsel, and we'll address those, which had happened before and had been addressed before. So I think that is a very important fact, that the defendant is bringing this to the table. And he's the one who starts talking about plea agreements and plea deals. And just as Judge Kemp, you made this point earlier, I want to just address it in terms of just a little bit of historical background, which is in the gun case there was a series of plea offers. When after that, those offers expired, he went to trial. There were more offers in the drug case, but on the Tuesday the trial was supposed to begin, and this was right after the Memorial Day weekend. On the Tuesday the trial was supposed to begin, there were no outstanding plea offers of any kind. There was just the defendant there on the morning of trial with 46 people who they were going to call in to do void here. So there's no plea negotiation process at all. So I think that's an important point, sort of understanding historically that background. Whether or not it was better or worse that the government was there, I don't think it goes one way or the other. I don't think that, I think had the government been there, had the government, you know, with which we're not there, I still don't think that the district court committed plain error in having the conversation in responding to Mr. Williams' comments the way the district court did. So I don't mean to say, Your Honor, that the government shouldn't have been there, these conversations should happen outside the context of the government. Candidly, had the government been there, it might have happened differently. The government might have said, Your Honor, you know, we don't think these are. Well, you can't. If you're locked out of the room, you can't know what someone's going to say. That's right. And you would probably never know what someone had said but for the fact that he brought this up. Otherwise, that would have been sealed, right? Candidly, Your Honor, I don't think any of us in the prosecution team knew what was said in that courtroom until Mr. Wishley's brief came across our desk. I don't think any of us looked at it. I think we had a plea, we moved on, so I don't think anybody did know. Can you address briefly, Mr. Wishley makes a persuasive case as to why there was a, he would meet the reasonable probability standard that the evidence was not so strong that he had indicated that he wanted to go to trial until the judge made the statement. Can you address that issue? Sure. Let's talk about the evidence first, which is, I think the evidence is a lot stronger in this case than Mr. Wishley has stated. First, there's early contact that night between the defendant and police officers where the defendant says, I had crack cocaine on me, I swallowed it. Since I had stuff on me, I swallowed it. I don't have any money. You can check my pockets. Then later that night, the officers see some kind of interaction between him and somebody else in a dark alley. He's arrested. They see the individual he's with swallow something. They don't know what it is, so they arrest both of them. They put them in a van, and as they're driving to the police station, Mr. Williams is acting out inside the car. What he's saying inside the car is, you can't strip search me, you can't strip search me, you can't strip search me. Then he leans over to one of the officers and says, if I give you the dope, will you let me go? Then he goes back to, you can't strip search me. Then all of a sudden, he's quiet in the back of the car. He doesn't move. So they take him out of the car. They strip search him. They don't find any drugs. The officer says, wait a minute. He says, don't strip search me. He says, if I gave you the dope, would you go away? Where's the dope? He goes back to the car, and in the backseat, he finds individually wrapped rocks of crack cocaine. In the backseat of what car? In the backseat of the car that Mr. Williams and Mr. Peltz were transported to the police station. So the police car. In the police car, correct. But here's the kicker, Your Honors. We did DNA testing on the drugs, which we basically drew a conclusion that Mr. Williams had hit it on his body. So we did some DNA testing. The DNA tests that we had done excluded Mr. Peltz from having touched the drugs and had a DNA that had a, and I forget what the percentage, but some percentage matched to Mr. Williams. So this is a case where we have the defendant in a car saying, if I give you the dope, will you let me go? And then DNA on the drugs that excludes the other person from the car as having touched those drugs or having had those drugs on this person. So I actually think the evidence in this case was very strong. Was it as strong as the gun case? No. But the evidence in this case was very strong. Then I think the question is, is there a reasonable probability that he would have pled anyway? I actually read the fact that he took a straight-up deal as indication that he would have pled. He also participates in the conversation during the plea and inserts with the judge the amount of drugs that they're talking about. The defendant is at that point saying to the court, it was 4.6 grams of crack. Can you put it in the plea agreement? It's not a defendant who got dragged kicking and screaming to this plea, Your Honor. This is a defendant who actively participated in the, you know what, Your Honor, I'd actually like that in the plea agreement, in the statement of plea. So can you please add that in? I think that's indication that this defendant really, that didn't necessarily, that would have pled guilty in any event. Because he, and he's taking a deal that's straight up, that offers him no benefit, no benefit that we sort of typically think of in any way. It's not the kind of Bruce or Bradley benefit where he's going to get a reduced sentence or he's getting an agreed recommendation from the government. He's pleaded guilty of his own volition without any agreement. Why would somebody who does that not be inclined to plead guilty? I think that this defendant on this morning was faced with a very difficult decision. Go to trial with a lawyer who I don't like or plead guilty. And I think he had a decision and at the end of the day he took one of those two things because he did not like the idea of going to a trial with a lawyer he didn't like. And he does ultimately, even in the, even in pleading straight up, get some benefit, which the district court explained to him during the plea colloquy, which is he would get acceptance of responsibility, which is a small deduction, but with Mr. Williams, who might ultimately be a career offender, a material reduction. So this is a defendant who had some advantages in pleading guilty the morning of trial, wasn't locked in to have, you know, to agreeing to make any recommendation on his own. He could recommend anything he wants. He can argue that he's not a career offender. He could appeal the sentence, the sentence itself, if he thought that the sentence was too high. And who knows what would have happened had Judge Martinez given him a much longer sentence. Judge Martinez gave him 150 months concurrent to the gun charge of 120 months, so really effectively only 30 more months on the drug case, whereas the guidelines for being a career offender were 160 to 210 months. And Judge Martinez could have given them to him consecutively. So this is a defendant who didn't have to agree to any of those things. He could just come in, argue for whatever he wanted, and appeal a sentence however he wanted. Well, if there's another, you said another advantage is he can appeal because if he had taken some sort of negotiated deal between him and the prosecutor, there might have been an appeal waiver. And most of the cases where we have a plea agreement, Your Honor, there is an appeal waiver. The advantage of pleading straight up is you can argue for whatever. You can be here today saying for the court, I think the sentence was even unreasonable. He could have done that. So I assume, Your Honors, my time's up, unless the Court has any further questions. We don't appear to. Thank you. Thank you, Your Honors. I guess I'm not clear on whether the government is saying he obtained an advantage or he didn't obtain an advantage from pleading guilty. But I think the fact that Mr. Williams pled guilty to an open wreck is an indication that he took something from the conversation that he had with Judge Martinez and that something was, don't worry about what the state is going to recommend. I'm the one who gets to decide between me and you. The government seems intent on blaming Mr. Williams for the conversation that took place in chambers. And frankly, this is getting things backwards. It is not Mr. Williams' responsibility to make sure that the district court complies with Rule 11c1. It is the court's obligation to comply with the rule. There's a point during the conversation when the judge says to Mr. Williams, I've been doing this for 19 years. This is not my first rodeo. And I think that's a very telling comment. The district court knows what is appropriate and what isn't appropriate in that context. And the court could easily, if Mr. Williams is talking about things that don't have to do with representation by his attorney but instead have to do with his dissatisfaction with the plea offer, the judge is very capable of shutting down that conversation and saying, I'm not going to talk to you about that. So I think it's really disingenuous to argue somehow that Judge Martinez was blindsided by Mr. Williams. I mean, that's getting the dynamics of this relationship completely backwards. What would be defense counsel's obligation if you thought that a judge was violating 11c? Well, defense counsel's obligation would be to lodge an objection and then we'd have a different standard of review on appeal. Now, the other thing, the last point that I want to make during the very brief time that I have left, has to do with the government's argument that, you know, what the judge is saying is tantamount to what is said during a plea colloquy. Well, virtually all the cases make it clear that statements by a district court during a plea colloquy, after the parties have had a meeting of the minds and have negotiated a settlement of the case, those are obviously not only encouraged but required by the rule. The court has to make sure that the defendant understands the plea agreement that he is entering into. That is entirely different when the court participates in discussions with the defendant in the absence of any prior agreement between the parties and the government, you know, admits candidly here today there was no negotiation taking place at the time that this conversation took place between the judge and Mr. Williams and immediately after the conversation in the absence of any negotiations, Mr. Williams entered a plea of guilty to an open rec. I think the rule is violated. We're asking the court to reverse. All right. This matter will stand submitted. Thank you both for your argument. I think you were both very well prepared and articulate in expressing your relative viewpoints. All right. This court is adjourned.
judges: Canby, Callahan, Ikuta